UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: JOHN P. SHERMAN,                      No. 17-10241-j7

         Debtor.

MALJAMAR FUEL STOP, LLC,

         Plaintiff,

v.                                                        Adversary No. 17-1039 J

JOHN P. SHERMAN,

         Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment ("Motion"). *See* Docket No. 22.[1] Plaintiff Maljamar Fuel Stop, LLC ("MFS") requests summary judgment on its non-dischargeability claims asserted under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6)[2] against Defendant John P. Sherman. Defendant John Sherman did not file a response to the Motion. MFS's claims stem from a contract for the construction of a fuel stop in Maljamar, New Mexico. Based on the facts not subject to material dispute, including the deemed admissions,[3] the Court finds and concludes that MFS is entitled to summary judgment determining that the debt at issue is non-dischargeable. However, claim preclusion limits the

---

[1] At the Court's request, Maljamar Fuel Stop, LLC supplemented the Motion with a certified copy of the complaint it filed in state court against Defendant John P. Sherman and others. *See* Docket No. 29.

[2] All future statutory citations in this Memorandum Opinion are to Title 11 of the United States Code, unless otherwise specified.

[3] Although Mr. Sherman filed an answer to MFS's complaint, Mr. Sherman failed to respond to MFS's discovery requests by the deadline fixed in the Court's order. *See* Order Ruling on Counsel's Motion to Withdraw without Consent of Client and on Plaintiff's Motion to Compel ("Order") – Docket No. 20; Affidavit of Daniel A. White, attached to the Motion as Exhibit 3. As a result, all of MFS's unanswered requests for admission are deemed admitted. *See* Order, ¶ 3 ("Defendant's failure to deny a requested admission in a written response to requests for admissions [by the deadline] . . . will result in deemed admissions to the requests."); *see also* Fed.R.Civ.P. 36(a)(3), made applicable to adversary proceedings by Fed.R.Bankr.P. 7036.

non-dischargeable damages to the amount of the default judgment awarded in favor of MFS in the pre-petition state court action premised on the same transaction that forms the basis of MFS's non-dischargeability claims asserted in this adversary proceeding.

## SUMMARY JUDGMENT STANDARDS

Summary judgment can streamline litigation and avoid the unnecessary expense of proceeding to trial. *See Farnell v. Albuquerque Publ'g Co.,* 589 F.2d 497, 502 (10th Cir. 1978) ("[S]ummary judgment is a useful tool which may avoid needless trials.") (citation omitted); *Mitchell v. Zia Park, LLC,* 842 F. Supp.2d 1316, 1321 (D.N.M. 2012) ("Principal purposes of summary judgment include streamlining litigation and saving needless time and expense by isolating and disposing of purely legal issues and factually unsupported claims and defenses.") (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986) (remaining citation omitted)). The Court will grant summary judgment when the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056.

"[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323. Even if an opposing party fails to respond to a request for summary judgment, the Court must satisfy itself that the requesting party is entitled to judgment as a matter of law based on the facts not subject to genuine dispute. *See Reed v. Bennett,* 312 F.3d 1190, 1194-95 (10th Cir. 2002) ("If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of

fact remain for trial and the moving party is entitled to judgment as a matter of law."). Only if the properly supported material facts entitle the requesting party to judgment as a matter of law is it appropriate for the Court to grant summary judgment. *Id.* at 1195. However, by failing to respond, "the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion." *Id.*

FACTS NOT SUBJECT TO GENUINE DISPUTE

1. John Sherman filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 3, 2017. *See* Complaint, ¶ 3; Answer, ¶ 1.

2. MFS filed its Verified Complaint for Determination Excepting Debt from Dischargeability (the "Complaint") on May 12, 2017. *See* Docket No. 1.

3. Mr. Sherman filed an answer to the Complaint on July 14, 2017. *See* Docket No. 9.

4. On December 6, 2013, MFS and Mr. Sherman entered into a contract for the construction of a fuel station in Maljamar, New Mexico (the "Construction Contract"). Complaint, ¶ 12; Answer ¶ 1.

5. Mr. Sherman did not complete his obligations under the Construction Contract. *See* Request for Admission ("RFA") No. 1.

6. Pre-petition, MFS filed a complaint against Johnny Johns Construction, LLC, John Sherman, and Johnny Sherman in the Fifth Judicial District Court, County of Lea, State of New Mexico, as Case No. D-5-6-CV-2014-00925 (the "State Court Action"). *See* Complaint, ¶ 10; Answer, ¶ 1.

7. In the State Court Action, MFS asserted claims for debt and money due on open account, piercing the corporate veil, and conversion. *See* Complaint, ¶¶ 11 and 18; Answer, ¶ 1.

8. All claims asserted in the State Court Action arose in connection with the Construction

Contract. *See* Second Amended Complaint on Contract Against Johnny Johns Construction, L.L.C., and for an Award for Individual Damages Against John Sherman and Johnny Sherman, Members of Defendant Johnny John's Construction, L.L.C. for Conversion and to Pierce the Corporate Veil, attached to Plaintiff's Notice of Filing ("State Court Complaint") – Docket No. 29.[4]

9. On November 9, 2016, MFS obtained a default judgment in the State Court Action against Johnny Johns Construction, LLC, John Sherman, and Johnny Sherman on all three claims. *See* Default Judgment on Second Amended Complaint on Contract ("Default Judgment") – Exhibit 4 to Motion; Complaint, ¶ 18; Answer, ¶ 1.

10. The Default Judgment awarded MFS judgment against Mr. Sherman in the amount of $155,693.26 plus interest at the rate of 15% per annum and attorneys' fees in the amount of $9,786.56 and costs in the amount of $646.90, for a total of $166,126.72. Default Judgment; Complaint, ¶ 17; Answer, ¶1.

11. From December 6, 2013 through January 24, 2014, Mr. Sherman received and negotiated the following checks from MFS made payable to Johnny Johns, Construction, LLC pursuant to the Construction Contract:

> Check dated December 6, 2013 in the amount of $127,176.00
> Check dated December 23, 2013 in the amount of $54,000.00; and
> Check dated January 23, 2014 in the amount of $69,480.00

*See* RFA Nos. 2, 3, 4, 5, 6, 7, 8, 9, and 10.

12. Johnny Johns Construction, LLC is a trade name used by Mr. Sherman for doing business and is not a separate legal entity from Mr. Sherman. *See* RFA Nos. 19 and 20; Default

---

[4] At a pre-trial conference held June 28, 2018, the Court directed counsel for MFS to supplement the Motion with a copy of the State Court Complaint filed in the State Court Action. MFS filed Plaintiff's Notice of Filing on July 23, 2018.

Judgment on Second Amended Complaint, attached to the Motion as Exhibit 4 (entering judgment in favor of MFS on its claim to pierce the corporate veil and allow personal judgment against Mr. Sherman).

13. Mr. Sherman used the following subcontractors to assist with the work under the Construction Contract: Cline Pump Co. ("Cline Pump"); Ken Phillips, D & R Electric ("D & R"), and Wallach Concrete, Inc. ("Wallach Concrete"). *See* RFA Nos. 24, 29, 36, and 53.

14. All or a portion of the funds Mr. Sherman received from MFS was intended for repayment of subcontractors who assisted Mr. Sherman in performing the Construction Contract. *See* RFA Nos. 12 and 13.

15. Mr. Sherman did not pay in full the subcontractors who assisted Mr. Sherman in performing the Construction Contract. *See* RFA No. 14.

16. Mr. Sherman diverted funds he received from MFS and used the funds for purposes other than to complete the Construction Contract, including payment of Mr. Sherman's personal debts unrelated to the Construction Contract. *See* RFA Nos. 21, 22, and 23.

17. Because Mr. Sherman failed to pay Cline Pump in full for work Cline Pump performed in connection with the Construction Contract, MFS was forced to pay Cline Pump $85,945.00. *See* RFA Nos. 25, 26, 27, 28.

18. Because Mr. Sherman failed to pay Ken Phillips in full for work Mr. Phillips performed in connection with the Construction Contract, MFS was forced to pay Mr. Phillips $14,770.00. *See* RFA Nos. 30, 31, 32, 33, 34, 35.

19. Because Mr. Sherman failed to pay D & R in full for work D & R performed in connection with the Construction Contract, MFS was forced to pay D & R $20,023.10. *See* RFA Nos. 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52.

20. Because Mr. Sherman failed to pay Wallach Concrete in full for work Wallach Concrete performed in connection with the Construction Contract, MFS was forced to pay Wallach Concrete $25,595.95. *See* RFA Nos. 54, 55, 56, 57, 58, 59.

21. Mr. Sherman's conduct in not using money paid to him by MFS to pay subcontractors was without just cause or excuse. *See* RFA No. 75.

22. Mr. Sherman knew that not using money MFS paid to him to pay subcontractors was not the right thing to do. *See* RFA No. 74.

23. Mr. Sherman knew that not using the money MFS paid to him to pay subcontractors would harm MFS. *See* RFA No. 74. (The Requests for Admission contain two requests for admission numbered 74).

24. Mr. Sherman held himself out to be a licensed construction contractor under the New Mexico Construction Industries Licensing Act, N.M.S.A. 1978 §§ 60-13-1, et seq., with sufficient permitting to complete the Construction Contract. *See* RFA No. 67.

25. At the time of the Construction Contract, Mr. Sherman did not have a valid unexpired construction contractor's license. *See* RFA No. 60.

26. Before entering into the Construction Contract, Mr. Sherman never told MFS that Mr. Sherman was not a licensed construction contractor. *See* RFA No. 64.

27. At the time of the Construction Contract, Mr. Sherman was aware that MFS was under the impression that Mr. Sherman was a licensed construction contractor. *See* RFA No. 62.

28. Mr. Sherman intended to create a false impression on MFS's part that Mr. Sherman had the appropriate licensure to complete the Construction Contract. *See* RFA No. 67.

29. Mr. Sherman intended MFS to rely on Mr. Sherman's representations as to his licensing status in making its decision to enter into the Construction Contract. *See* RFA No. 65.

30. Mr. Sherman was aware at the time of the Construction Contract that MFS would not have entered into the Construction Contract if it knew that Mr. Sherman was not a licensed construction contractor. *See* RFA No. 63.

31. Whether Mr. Sherman was a licensed construction contract was material to MFS's decision to enter into the Construction Contract. *See* RFA No. 61.

32. MFS justifiably relied on Mr. Sherman's representation that he was a licensed contractor. *See* RFA No. 66.

33. Mr. Sherman wrongfully induced MFS to enter into the Construction Contract. *See* RFA No. 69.

34. All funds MFS paid to Mr. Sherman under the Construction Contract were obtained by fraud. *See* RFA No. 70.

35. At all times during Mr. Sherman's work on the Construction Contract, Mr. Sherman intended to defraud MFS. *See* RFA No. 72.

## DISCUSSION

I. Dischargeability

MFS asserts non-dischargeability claims under the following Bankruptcy Code sections:

11 U.S.C. § 523(a)(2)(A) – "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition";

11 U.S.C. § 523(a)(4) – "fraud or defalcation while acting in a fiduciary capacity"; and

11 U.S.C. § 523(a)(6) – "willful and malicious injury by the debtor to another entity or to the property of another entity."

The Court construes exceptions to discharge narrowly, with any doubt resolved in favor of the debtor. *See Bellco First Federal Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997) ("[E]xceptions to discharge are to be narrowly construed, and because of the

-7-

Case 17-01039-j    Doc 30    Filed 07/26/18    Entered 07/26/18 14:53:50 Page 7 of 15

fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor.") (citing *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir. 1986)).

<u>False pretenses, false representation, or actual fraud - § 523(a)(2)(A)</u>

Under 11 U.S.C. § 523(a)(2)(A), a debt "for money, property, [or] services" will not be discharged in bankruptcy "to the extent obtained by" "false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The party asserting a non-dischargeability claim under 11 U.S.C. § 523(a)(2)(A) bears the burden of proving, by a preponderance of the evidence,[5] that "1) [t]he debtor made a false representation;" 2) "the debtor made the representation with the intent to deceive the creditor"; 3) "the creditor relied on the representation;" 4) "the creditor's reliance was [justifiable];" and 5) the "debtor's representation caused the creditor to sustain a loss." *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996); *Field v. Mans,* 516 U.S. 59, 116 S. Ct. 437, 133 L.Ed.2d 351 (1995) (changing the standard of reliance under 11 U.S.C. § 523(a)(2)(A) from "reasonable" to "justifiable"). False representations under 11 U.S.C. § 523(a)(2)(A) are untrue "representations knowingly and fraudulently made that give rise to the debt." *Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 885 (10th Cir. BAP 2002) (citation omitted). False pretenses "involve an implied misrepresentation that is meant to create and foster a false impression." *Cabrera v. Larranaga (In re Larranaga)*, 2011 WL 1344562, at *4 (Bankr. D.N.M. Apr. 8, 2011) (quotation marks and citation omitted).

A contractor's misrepresentation that he or she holds a valid contractors' license can form the basis of a non-dischargeability claim under 11 U.S.C. § 523(a)(2)(A). *See, e.g., Larranaga*, 2011 WL 1344562; *Peterson v. Bozzano (In re Bozzano)*, 173 B.R. 990 (Bankr. M.D.N.C. 1994)

---

[5] *See Grogan v. Garner,* 498 U.S. 279, 291, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991) (establishing preponderance of the evidence standard of proof for non-dischargeability claims).

(debtor created a misimpression that he was a qualified contractor, when, in fact he was unlicensed), *abrogated on other grounds by Cohen v. de la Cruz,* 523 U.S. 213, 118 S. Ct. 1212, 140 L.Ed.2d 341 (1998); *Vaks v. Grenier (In re Grenier)*, 2009 WL 763352, at *9 (Bankr. D. Mass. Mar. 19, 2009) ("[W]hen a contractor positively misstates that he has the requisite license to perform home repairs, the false statement is a misrepresentation as a contractor has a duty to disclose his lack of a license during negotiations.") (citation omitted); *McCain v. Fuselier (In re Fuselier)*, 211 B.R. 540, 543 (Bankr. W.D. La. 1997) (debtor knowingly misrepresented that he was a licensed contractor). In such cases, the creditor generally must show "that there was an intentional misrepresentation as to a material fact or qualification when soliciting or obtaining the work." *Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 622 (Bankr. N.D.N.Y 2010) (quotation marks and citation omitted).

The facts not subject to material dispute establish all the required elements of non-dischargeability under 11 U.S.C. § 523(a)(2)(A). Mr. Sherman held himself out to be a licensed contractor with sufficient permitting to complete the Construction Contract. *See* Undisputed Material Fact ("UMF") No. 23. In fact, Mr. Sherman did not hold a valid contractor's license at the time he entered into the Construction Contract with MFS. *See* UMF No. 24. Mr. Sherman obtained the Construction Contract under false pretenses by failing to disclose to MFS that he did not hold a valid contractor's license. *See* UMF Nos. 27, 28, and 29. He induced MFS to enter into the Construction Contract based on that false pretense. *See* UMF No. 32. Having a valid contractor's license was material to MFS, and MFS justifiably relied on Mr. Sherman's false pretense in entering into the Construction Contract. *See* UMF Nos. 31 and 32. MFS sustained damages as a result of Mr. Sherman's misrepresentations. All five elements necessary to sustain a non-dischargeability claim for a debt obtained by a false representation, false

pretenses, or actual fraud are present. MFS is, therefore, entitled to summary judgment on its non-dischargeability claim under § 523(a)(2)(A).

Because the Court concludes that the debt at issue is non-dischargeable under § 523(a)(2)(A), the Court need not consider MFS's non-dischargeability claims under § 523(a)(4) or § 523(a)(6). As explained below, the Default Judgment conclusively established the existence and validity of the debt at issue in this adversary proceeding and precludes MFS from obtaining additional damages based on alternative non-dischargeability claims premised on the same transaction or occurrences that formed the basis of its claims in the State Court Action.

II. Damages

MFS seeks total damages of $445,477.80, consisting of the following amounts:[6]

| | |
|---|---|
| Actual Damages | $396,990.05 |
| Pre-petition Attorneys' Fees and Costs | $10,433.46 |
| Pre-petition Interest | $5,566.26 |
| Post-petition Interest | $25,336.08 |
| Post-petition Attorneys' Fees | $7,151.95 |

Of the total damages, MFS claims $250,656 in damages on its § 523(a)(2)(A) claim based on Mr. Sherman's admission that all amounts MFS paid to Johnny Johns Const. Co. under the Construction Contract were obtained by fraud,[7] but asserts that it would entitled to judgment for the total requested damages under either § 523(a)(4) or § 523(a)(6). This Court disagrees. Regardless of the theory of recovery, MFS's damages are limited to the amounts fixed in the Default Judgment.

    A.   Claim Preclusion Caps the Amount of the Non-Dischargeable Debt

Claim preclusion can apply to bar parties from relitigating the existence and amount of a

---

[6] *See* Motion – Exhibit 5.
[7] *See* UMF Nos. 10 and 33; Breakdown of Damages – Exhibit 5 to Motion.

debt in a subsequent non-dischargeability proceeding to determine the nature of the debt. *See Comer v. Comer (In re Comer),* 723 F.2d 737, 740 (9th Cir. 1984) ("res judicata [claim preclusion] barred the bankruptcy court from looking behind the default judgment to determine the actual amount of the obligation."); *Heckert v. Dotson (In re Heckert)*, 272 F.3d 253, 258 (4th Cir. 2001) (claim preclusion "prevent[s] the unsettling of a prior judgment, whether by increasing or decreasing the award or by reversing the result."); *Vyshedsky v. Soliman (In re Soliman)*, 515 B.R. 179, 192 (Bankr. S.D.N.Y. 2014) (explaining that "[i]t is the nature of the debt that renders it non-dischargeable . . . . If the Court concludes that the debt is non-dischargeable, the Court must recognize by reason of claim preclusion, the state court's damages determination in the [default] Judgment.") (citations omitted); *Wilmers v. Yeager (In re Yeager)*, 500 B.R. 547, 555-56 (Bankr. S.D. Ohio 2013) (prior state court judgment did not have preclusive effect as to the nature of the debt under § 523(a)(6), but was binding on the bankruptcy court as to the existence, validity, and amount of the non-dischargeable debt); *see also, Silva v. May (In re May),* 321 B.R. 462, 466 (Bankr. N.D. Ohio 2004) (applying Ohio preclusion law to conclude that the bankruptcy court was barred "from reevaluating the damages awarded to Plaintiff in state court despite the judgment being entered by default.").

Claim preclusion will prevent this Court from reassessing the damages awarded by a state court, even if the state court judgment is entered by default, provided:

(a) the Default Judgment is entitled to claim preclusion effect under New Mexico law,
(b) the Default Judgment is based only on the same series of connected transactions underlying the claim of non-dischargeability, and
(c) this Court determines that the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A)[.]

*Sanders v. Crespin (In re Crespin)*, 551 B.R. 886, 899 (Bankr. D.N.M. 2016).[8]

---

[8] In *Crespin*, this Court explained why claim preclusion bars the re-litigation of the existence, validity, and amount of the debt in a subsequent non-dischargeability proceeding but does not apply to the subsequent determination of whether the debt is dischargeable. *Crespin*, 551 B.R. at 896-98. Once a judgment is entered, the claim merges into

-11-

Under New Mexico law, claim preclusion requires proof of the following elements: "(1) identity of parties or privies, (2) identity of capacity or character of persons for or against whom the claim is made, (3) the same cause of action, and (4) the same subject matter." *Brannock v. Lotus Fund*, 367 P.3d 888, 896 (N.M. Ct. App. 2015) (internal quotation marks and citation omitted). The party against whom claim preclusion will be applied must also have had a full and fair opportunity to litigate the claim in the earlier proceeding. *Crespin,* 551 B.R. at 899 (citing *State ex rel. Children, Youth and Families Dept. v. Scott C.,* 365 P.3d 27, 31 (N.M. Ct. App. 2015)).

The elements of claim preclusion are present here. MFS and Mr. Sherman were parties to the State Court Action and are parties to this adversary proceeding. The cause of action asserted in the State Court action that resulted in the debt which is the subject of this non-dischargeability proceeding is the same. The State Court Action was based on the Construction Contract and the series of transactions that also formed the basis of MFS's non-dischargeability

---

the judgment, and all claims based on the same transaction or series of transactions are extinguished, except where the court that issued the judgment could not grant a particular remedy or lacked jurisdiction or authority to grant the requested relief. *Id.* at 897 (citing Restatement (Second) of Judgments § 17(1) and § 26(c)). "[T]he claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24(1). When a plaintiff obtains a judgment in state court against a defendant who later files a bankruptcy petition, and the plaintiff then files a non-dischargeability adversary proceeding, the plaintiff's claim based on the series of transactions alleged in the state court is extinguished upon entry of the state court judgment, leaving the plaintiff with a claim on the judgment. *Id.* at 897-98. Claim preclusion does not bar the subsequent non-dischargeability action because the plaintiff could not bring a non-dischargeability claim until the defendant files a petition for bankruptcy. *See Brown v. Felsen,* 442 U.S. 127, 99 S. Ct. 2205, 60 L.Ed.2d 767 (1979) (claim preclusion, also known as res judicata, does not apply to the bankruptcy court's subsequent determination of dischargeability); *In re McKendry*, 40 F.3d 331, 336 (10th Cir. 1994) ("In bankruptcy court there are two separate and distinct causes of action: One cause of action is on the debt and the other cause of action is on the dischargeability of that debt, a cause of action that arises solely by virtue of the Bankruptcy Code and its discharge provisions.") (internal quotation marks and citations omitted). In other words, the *nature* of the debt, *i.e.,* whether it is dischargeable, is a separate claim from the existence and amount of the debt, as determined in the prior state court action. If a judgment has been entered in a state court before the filing of a bankruptcy petition, this Court determines whether the debt evidenced by the judgment is non-dischargeable, but the state court judgment "is conclusive as to the cause of action upon which suit was based." *Paramount Pictures Corp. v. McKenna (In re McKenna)*, 4 B.R. 160, 162 (Bankr N.D. Ill. 1980).

claims asserted in this adversary proceeding. Finally, both parties to the State Court Action had a full and fair opportunity to litigate the claims. There is no evidence before the Court that Mr. Sherman did not have an opportunity to answer the complaint filed in the State Court Action and defend the claims asserted against him on the merits. And as plaintiff in the State Court Action, MFS had a full and fair opportunity to establish its damages.

Even though MFS obtained its judgment against Mr. Sherman in the State Court Action by default, that Default Judgment conclusively establishes the amount of the damages MFS can claim are non-dischargeable. MFS's non-dischargeability claims are based on the same Construction Contract and series of transactions relating to the Construction Contract that formed the basis of its claims in the State Court Action. This Court has now exercised its exclusive jurisdiction to determine the non-dischargeable nature of the debt under § 523(a)(2)(A) based on the facts not subject to genuine dispute. Claim preclusion therefore bars MFS from revisiting the amount of non-dischargeable damages.

The Default Judgment awarded damages to MFS in the amount of $155,693.26 plus interest at the rate of 15% per annum from November 11, 2016, and attorneys' fees in the amount of $9,786.56 and costs in the amount of $646.90, for a total of $166,126.72. Notwithstanding Mr. Sherman's deemed admission that all amounts paid to MFS under the contract (*i.e.* $250,656.00) were obtained by fraud, the Default Judgment caps the amount of the non-dischargeable damages because the Default Judgment, which was premised on the same actions that formed the basis of MFS's § 523(a)(a)(2)(A) claim, must be given preclusive effect.

    B. MFS is not Entitled to Include Post-Petition Attorneys' Fees as Part of the Non-Dischargeable Debt

Finally, although the attorneys' fees awarded in the Default Judgment are appropriately included in the total non-dischargeable debt, *Cohen v. de la Cruz,* 523 U.S. 213, 118 S. Ct. 1212,

140 L.Ed.2d 341 (1988),[9] MFS is not entitled to recover any post-petition attorneys' fees absent a contractual right to recover attorney's fees or absent an applicable fee-shifting statute. *See Associated Mortg. Corp. v. Weaver (In re Weaver)*, 579 B.R. 865, 913 (Bankr. D. Colo. 2018) ("[E]ven after *Cohen,* a party seeking an award of attorney fees in a dischargeability action or in connection with any litigation must still establish that one of the exceptions to the American Rule applies—fee shifting by contract or by statute.").[10] Instead, the American Rule, applicable in bankruptcy litigation, requires each litigant to "pay[ ] his own attorney's fees, win or lose, unless a statute or contract provide otherwise." *Baker Botts L.L.P. v. ASARCO, LLC*, 235 S. Ct. 2158, 2164, 192 L.Ed.2d 208 (2015) (internal quotation marks and citation omitted). *See also In re Busch,* 369 B.R. 614, 624 (10th Cir. BAP 2007) (explaining that "[u]nder the 'American Rule' . . . a prevailing party is not ordinarily entitled to collect attorney's fees from his opponent" and that "[t]his general rule applies to bankruptcy litigation.") (citations omitted). MFS has not directed the Court to any applicable fee shifting statute or fee shifting provision in the Construction Contract that would entitle MFS to recover its attorneys' fees incurred post-petition in litigating this non-dischargeability action.

## CONCLUSION

MFS is entitled to summary judgment on its non-dischargeability claim under § 523(a)(2)(A). The damages awarded in the Default Judgment fix the amount of the non-dischargeable debt. Once "the Court concludes that the debt is non-dischargeable, the Court must

---

[9] In *Cohen,* the Supreme Court determined that the total amount of the debt, including compensatory damages, treble damages, and attorney fees, as permitted under the applicable state statute, are part of the nondischargeable debt. 523 U.S. at 223.

[10] *See also Roshan Hospitality, LLC v. Patel (In re Patel)*, 536 B.R. 1, 23 (Bankr. D.N.M. 2015) (explaining that explaining that *Cohen* does not automatically entitle a litigant to recover attorneys' fees merely because the underlying claim is nondischargeable; rather, "if a party has an independent right to recover attorney's fees or costs under applicable law in connection with a particular nondischargeable debt, the party is entitled to an award of such attorney's fees or costs as part of the nondischargeable judgment under § 523(a).").

recognize, by reason of claim preclusion, the state court's damages determination" fixed in the Default Judgment. *Soliman,* 515 B.R. at 192. The Court will enter a separate judgment consistent with this Memorandum Opinion.

                                                                                */s/ Robert H. Jacobvitz*
                                                                                ROBERT H. JACOBVITZ
                                                                                United States Bankruptcy Judge

Date entered on docket: July 26, 2018

COPY TO:

| | |
|---|---|
| Daniel Andrew White | R. Trey Arvizu, III |
| Askew & Mazel, LLC | Former Attorney for Defendant |
| Attorney for Plaintiff | PO Box 1479 |
| 1122 Central Ave. SW, Suite 1 | Las Cruces, NM 88004 |
| Albuquerque, NM 87102 | |

John P Sherman
113 E Leman Road
Lovington, NM 88260